**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| SCSC, LLC, | ) | CASE NO: 1:12-cv-0661 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MAGISTRATE JUDGE VECCHIARELLI |
| | ) | |
| COLD STONE CREAMERY | ) | |
| LEASING CO., INC., | ) | **MEMORANDUM OF OPINION** |
| | ) | Doc. No. 5 |
| Defendant. | ) | |

This case is before the magistrate judge by consent.  Before the court is the motion of defendant, Cold Stone Creamery Leasing Co., Inc. ("Cold Stone"), to dismiss the case pursuant to Fed. R. Civ. P. 12(b)(1) & (3).  Doc. No. 5.  Plaintiff, SCSC, LLC ("SCSC"), opposes Cold Stone's motion.  Doc. No. 11.  For the reasons given below, the court **DENIES** Cold Stone's motion.

I.

The parties do not disagree regarding the relevant facts.  Kahala Franchise Corporation ("Kahala") is a Delaware Corporation with a principal place of business in Scottsdale, AZ.  Cold Stone is an Arizona corporation with a principal place of business in Arizona.  Cold Stone alleges, and SCSC does not deny, that Cold Stone is an affiliate of Kahala.  SCSC is an Ohio limited liability company with a principal place of business

in Ohio.

On June 17, 2004, Cold Stone entered into a master lease ("the Master Lease") with Crocker Park, LLC, for a site at Crocker Park in Westlake, Ohio ("the premises").

On November 4, 2009, SCSC and Kahala entered into a franchise agreement ("the Agreement") whereby SCSC obtained permission to operate a Cold Stone Creamery retail store. Among other things, the Agreement required SCSC to enter into a sublease with Kahala or an affiliate for its retail premises. The Agreement also contained the following text:

> [A]ny controversy or dispute that arises between the parties related in any way to this Agreement or the relationship between the parties must be submitted to non-binding mediation before an action may be brought in a court of competent jurisdiction or in arbitration. At the request of either party, the mediation will be conducted in secrecy. . . . [O]nce the mediation has been Completed, the parties must submit any unresolved dispute to arbitration administered by the American Arbitration Association ("AAA") under its Commercial Arbitration Rules. . . . The place of arbitration will be Scottsdale, Arizona. . . . Disputes concerning the validity or scope of arbitration, including whether a dispute is subject to arbitration, are beyond the authority of the arbitrator(s) and will be determined by a court of competent jurisdiction pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* . . . Either party may appeal the final award of the arbitrator(s) to the appropriate District Court.

The Agreement, Motion to Dismiss, Exh. A, pp. 40-41 (capitalization in the original).

As reflected in the Agreement, SCSC and Cold Stone entered into a sublease ("the Sublease") for the premises for the operation of SCSC's retail store. Cold Stone executed the Sublease on December 1, 2009, and its effective date was November 4, 2009. The initial term of the Sublease was from October 1, 2009 through August 31, 2014. The Sublease required SCSC to pay rent and other amounts to Cold Stone. These payments were same amounts and the same number of installments as the payments due from Cold Stone to Crocker Park, LLC under the Master Lease.

2

Payments under the sublease were to be made in advance of the deadline for Cold Stone to pay Crocker Park, LLC the corresponding amounts under the Master Lease. The Sublease restricted the use of the premises to the "operation of a Cold Stone Creamery restaurant."  The Sublease, Motion to Dismiss, Exh. B, p. 5.  The Sublease also referenced the Agreement as follows:  "WHEREAS, Sublessor and Sublessee have entered into that certain Franchise Agreement for Cold Stone Creamery© Store No. 20985 . . . ."  The Agreement, p.1.  The Sublease does not contain a dispute resolution clause.

SCSC complied with all the terms and conditions of the Sublease.  SCSC alleges that although Cold Stone drew from SCSC's bank account the rent required by the Master Lease and the Sublease, it failed to pay Crocker Park, LLC the rent required by the Master Lease.  According to SCSC, Cold Stone's failure to pay Crocker Park, LLC the required rent forced SCSC to cease retail operations and vacate the premises, causing SCSC damages.

On February 6, 2012, SCSC filed in the Court of Common Pleas of Lorain County an action against Cold Stone for breach of contract.  On March 16, 2012, Cold Stone removed the action for federal court.  Cold Stone now moves to dismiss the case pursuant to Fed. R. Civ. P. 12(b)(1) & (3).  SCSC opposes Cold Stone's motion.

II.

Cold Stone seeks to enforce the arbitration clause in the Agreement pursuant to Fed. R. Civ. P. 12(b)(1) & (3).  The Sixth Circuit has noted that there is a debate among the circuits as to whether a motion to dismiss based on contractual forum preclusion should be brought pursuant to Fed. R. Civ. P. 12(b)(1), 12( b)( 3), or 12(b)(6), and the

3

Sixth Circuit has not decided that question. *See Security Watch, Inc. v. Sentinel Systems, Inc.*, 176 F.3d 369, 371 n.2 (6th Cir. 1999). Regardless of whether the motion is raised pursuant to Fed. R. Civ. P. 12(b)(1) or (3), the relevant issue in either case is how the arbitration clause should be construed. As jurisdiction is more fundamental than venue, the court shall consider the motion as a motion to dismiss for lack of jurisdiction.

When a defendant challenges jurisdiction, the plaintiff must prove jurisdiction to survive the motion. *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir.1990). The court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and either party may supplement the record with affidavits. *Rogers v. Stratton Industries,* 798 F.2d 913, 916 (6th Cir. 1986). However, when a defendant contends that the complaint does not allege sufficient facts to create subject matter jurisdiction, the trial court must take the allegations in the complaint as true. *Jones v. City of Lakeland,* 175 F.3d 410, 413 (6th Cir.1999).

III.

Congress passed the Federal Arbitration Act ("FAA") in 1925 to enact "'a national policy favoring arbitration' of claims that parties contract to settle in that manner . . . ." *Vaden v. Discover Bank*, 556 U.S.49, 57 (2009) (quoting *Preston v. Ferrer,* 552 U.S. 346, 353 (2008)). The FAA manifests "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983). A party may petition in "any United States district court which, save for such agreement, would have jurisdiction under title 28 . . . of the subject matter of a suit arising out of the controversy between the parties" to compel arbitration pursuant to an

4

arbitration clause.  9 U.S.C. § 4.  The district court should dispose of a suit involving an arbitration clause as follows:

> [U]pon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

In proceeding with a motion to compel arbitration, a court must first determine if the parties intended to arbitrate their dispute, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626 (1985):

> [W]here the agreement contains an arbitration clause, the court should apply a presumption of arbitrability, resolve any doubts in favor of arbitration, and should not deny an order to arbitrate "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."

*Simon v. Pfizer Inc.*, 398 F.3d 765, 773 n.12 (6th Cir. 2005) (quoting *United Steelworkers v. Mead Corp.,* 21 F.3d 128, 131 (6th Cir.1994)) (citation omitted).

Despite the strong policy in favor of arbitration, parties may not be compelled to arbitrate without their consent:

> [T]he federal policy in favor of arbitration is not an absolute one.  Arbitration under the Federal Arbitration Act is "a matter of consent, not coercion."  "While ambiguities in the language of the agreement should be resolved in favor of arbitration, we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated."  This Court has recently stated that "no matter how strong the federal policy favors arbitration, arbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration."

*Albert M. Higley Co. v. N/S Corp.*, 445 F.3d 861, 863 (6th Cir. 2006) (citations omitted).

The Sixth Circuit is clear about the permitted scope of the challenge to the

agreement's validity and the law to be applied in resolving whether the arbitration clause is valid:

> In determining whether the parties have made a valid arbitration agreement, "state law may be applied *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally," although the FAA preempts "state laws applicable *only* to arbitration provisions." Therefore, state law governs "generally applicable contract defenses [to an arbitration clause], such as fraud, duress, or unconscionability." In assessing whether an agreement to arbitrate has been made, moreover, "[c]ourts are to examine the language of the contract in light of the strong federal policy in favor of arbitration. Likewise, any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration."

*Great Earth*, 288 F.3d at 889.

In the present case, the arbitration clause at issue is in the Agreement between Kahala and SCSC. SCSC, however, has brought suit against Cold Stone. In response to Cold Stone's motion to dismiss, SCSC objects that it did not agree in the arbitration clause in the Agreement, or anywhere else, to arbitrate disputes with Cold Stone.

Cold Stone's response proceeds as follows: (1) the Sublease was signed after the Agreement and arose out of the relationships created in the Agreement; (2) SCSC, Kahala, and Cold Stone variously signed the Sublease and the Agreement; (3) the arbitration clause in the Agreement requires arbitration of any controversy or dispute that arises between the parties related in any way to the Agreement; (4) the dispute between SCSC and Cold Stone arose out of the Agreement; therefore (5) the arbitration clause in the Agreement requires SCSC to arbitrate its dispute with Cold Stone.

There are a number of problems with this argument. First, it attempts to transform the Sublease and the Agreement into a single contract, with the provisions of Agreement binding the parties to the Sublease. But these are two distinct contracts,

6

even if they are related, and differing legal entities entered into them.  Second, the dispute between SCSC and Cold Stone did not arise out of the Agreement.  That dispute arose directly out of the Sublease.  Third, Cold Stone's argument ignores the crucial issue of the identity of the "parties" referenced in the arbitration clause.  The language of the arbitration clause clearly implicates only two parties in the agreement to arbitrate:

> [A]ny controversy or dispute that arises between the parties related in any way to this Agreement or the relationship between the parties must be submitted to non-binding mediation before an action may be brought in a court of competent jurisdiction or in arbitration.  At the request of *either* party, the mediation will be conducted in secrecy . . . .

The Agreement at 40 (emphasis added).  The use of the word "either" indicates that there are two parties to the arbitration agreement.  Those parties are the two parties who signed the Agreement containing the arbitration clause, SCSC and Kahala.  The intention of the parties, as expressed in the plain text of the arbitration clause, requires SCSC and Kahala to arbitrate disputes arising between *them* related in any way to the Agreement.  The arbitration agreement does not evidence an intention that SCSC arbitrate a dispute with anyone other than Kahala, including Cold Stone.  Thus, SCSC has not consented to arbitrate disputes with Cold Stone, and the broad federal policy in favor of arbitration cannot require it to do so.

IV.

The arbitration clause in the Agreement does not require SCSC to arbitrate disputes with Cold Stone.  As there is no requirement that SCSC arbitrate disputes arising between them, this court is not deprived of subject matter jurisdiction to hear this case.  Consequently, Cold Stone's motion to dismiss pursuant to Fed. R. Civ. P.

7

12(b)(1)[1] is **DENIED**.

    **IT IS SO ORDERED.**

Date: April 24, 2012                      s/ *Nancy A. Vecchiarelli*
                                                 Nancy A. Vecchiarelli
                                                 United States Magistrate Judge

---

[1] The result would be the same if the motion were construed as brought pursuant to Fed. R. Civ. P. 12(b)(3). If the arbitration clause does not require SCSC to arbitrate its dispute with Cold Stone, then venue is not improper on account of an arbitration agreement.